**Roy D. GARNER et ux., Appellants,**

v.

**EAST TEXAS NATIONAL BANK OF PALESTINE, Appellees.**

**No. 1370.**

Court of Civil Appeals of Texas, Tyler.

Oct. 30, 1980.

Rehearing Denied Dec. 11, 1980.

Monroe Gaddy Wells, James N. Parsons, Parsons, Thorn & Wells, Palestine, for appellants.

Paul A. Clark, Kenzy D. Hallmark, Zeleskey, Cornelius, Rogers, Hallmark & Hicks, Lufkins, for appellees.

McKAY, Justice.

A take–nothing judgment was rendered in this suit in which damages were sought for failure to make proper disclosures in a consumer credit transaction as required by both state and federal consumer protection acts. We affirm the trial court's decision.

On March 28, 1978, Phillip O. Watson, a contractor and homebuilder, agreed to construct a family home for appellants Roy and Charla Garner. A builder's and mechanic's lien contract and note were executed which obligated the Garners to pay to Watson the sum of $42,636.00 plus interest thereon from date until maturity at the rate of 9¼ per cent per annum. Immediately thereafter, Watson executed an instrument entitled "Transfer of Lien" which apparently transferred Watson's interest in the contract and note to appellee East Texas National Bank (Bank). There is some evidence that the Bank renewed and extended the note. At the same time Watson also executed his own note to the Bank for $38,000.00 to finance interim construction costs.

Thereafter appellants brought an action under the Consumer Credit Code of Texas (1975 Tex.Gen.Laws, ch. 184, §§ 14.01 et seq., at 421)[1] and the Federal Truth in Lending Act (15 U.S.C.A. §§ 1601, et seq.) alleging that Watson was a "creditor" within the meaning of the statutes and therefore subject to such statutes and that the Bank, as an assignee of Watson under the "Transfer of Lien," should be liable for the assignor's failure to make the proper disclosure of the terms and conditions of credit in the original note.[2] Also, appellants alleged that the Bank itself did not make the required disclosures upon renewal and extension of the note. Prayer was made for twice the finance charges and reasonable attorney's fees.

The Bank generally denied appellants' allegations and specially denied that the instrument entitled "Transfer of Lien" constituted an assignment within the meaning of the statute. It contended that its only interest in the Garner's note and lien contract was a security interest created to secure a loan to Watson for interim construction costs. Also, it was expressly denied that the agreement between the appellants and Watson was a "consumer credit transaction" covered by the consumer credit statutes. Appellee then counterclaimed against appellants alleging that the inclusion of the provision for 9¼% interest per annum in the contract was a mutual mistake and that the contract should be reformed to exclude that provision.

The case was tried before the court, and after the take–nothing judgment was entered, requests for Findings of Fact and Conclusions of Law were made by both parties. The trial court made no findings with respect to any ground of recovery or defense, but did make findings relating to appellants' prayer for attorney's fees, that

---

1. This chapter was repealed in August of 1979.

2. The Federal Truth In Lending Act, 15 U.S.C.A. § 1640(d) states:
   Any action which may be brought under this section against the original creditor in any credit transaction involving a security interest in real property may be maintained against any subsequent assignee of the original creditor

where the assignee, its subsidiaries, or affiliates were in a *continuing business relationship* with the original creditors either at the time the credit was extended or at the time of the assignment ... (Emphasis added.)
The same provision in the Texas statute is found at 1975 Tex.Gen.Laws, ch. 184, § 14.-19(d), at 432.

recovery was sought under Article 5069 V.A.C.S. and the Federal Truth In Lending Act and that there was no evidence of any mutual mistake between appellants and Watson as to the terms of the note and contract executed on March 28, 1978. Appellants perfected this appeal bringing four points of error.

Appellants argue that since the trial court filed no substantive findings, it must be presumed that the trial court found either one or more of the following facts: (1) that Watson was not a "creditor" as that term is defined in the state and federal law; (2) that Watson did not extend credit to appellants; (3) that appellee was not a subsequent assignee of the contract and note; and/or (4) that there was not a continuing business relationship between the Bank and Watson. In their four points appellants contend there was no evidence to support these presumed findings and that the evidence conclusively showed the opposite to be true.

The affirmance of any one of these implied findings would absolve the Bank of any liability under the consumer credit laws. Since no appeal was made from the trial court's denial of recovery for the Bank's failure to disclose upon renewal of the note, that decision is not before this court.

■ The determinative issue in this case is raised by appellants' third point of error which states that there is no evidence to support the trial court's implied finding that the Bank was not a subsequent assignee of Watson, the original creditor. We find sufficient evidence in the record to support the trial court's presumed finding in this matter and consequently must affirm the judgment.

Appellants argue that the "Transfer of Lien" executed on March 28, 1978, by Watson to the Bank constituted an absolute assignment and transfer of the Garners' note and all liens securing its payment.[3] No provision in that instrument stated that the transfer was merely to provide collateral for a loan, and no separate instrument was produced which created a security interest in the Garners' note and lien contract.[4]

The Bank relies mainly on the testimony of its president Cad Williams to prove that a security interest only had been intended and that no absolute assignment had occurred. Also, John Davis, an attorney from Palestine testified that it was the usual custom in the area to secure interim construction loans by executing what appeared to be a direct assignment to a bank from the contractor of the original note and mechanic's lien contract.

Objections were made by appellants to the admission of this testimony at the trial. On appeal appellants argue that such parol evidence as to the existence of a security agreement was inadmissible to contradict the terms of a written instrument that on its face was complete and unambiguous. Accordingly, they contend that such testimony is not admissible evidence to support the trial court's judgment.

Appellee counters that William's and Davis' testimony was admissible as an exception to the so-called "parol evidence rule."[5] Its argument rests primarily on the case of

3. The instrument entitled "Transfer of Lien" states that Phillip O. Watson has "TRANSFERRED and ASSIGNED, GRANTED and CONVEYED and by these presents TRANSFERS, ASSIGNS, GRANTS and CONVEYS unto East Texas National Bank ... the above described note (the Garners' note) together with all liens, and any superior title held by the undersigned securing the payment thereof."

4. Phillip Watson's note to the Bank, which was introduced into evidence by appellee, did not specifically create a security interest in the notes and lien contract.

5. The rule is stated in 2 C. McCormick and R. Ray, Texas Law of Evidence § 1634 (Texas Practice 2d ed. 1956):

In case of a direct contradiction between the writing and the outside expression, it is clear that the writing (however incomplete and subject to be supplemented in respect to other terms) always controls, for no intention that the two shall stand together could normally be presumed.

*Hillcrest State Bank v. Bankers Leasing Corp. of Texas*, 544 S.W.2d 727, 728 (Tex. Civ.App.–Dallas 1976, writ ref'd n. r. e.) in which it was held that an assignment of a lease absolute on its face could be treated as security for a debt by the court if it was so intended by the parties. The court decided that parol evidence *or* a separate written agreement could be used to show such an intent. Appellee asserts that this case is directly on point as to the issue at hand and that the testimony of Williams and Davis was properly admitted as evidence of the intention between Watson and the Bank to create a security interest in the Garners' note and lien contract rather than to effect an absolute assignment.

There are numerous Texas cases which support appellee's argument that parol evidence is admissible to show that a deed absolute on its face was actually intended to create a security interest only. *Thigpen v. Locke*, 363 S.W.2d 247 (Tex.1962); *Wilbanks v. Wilbanks*, 330 S.W.2d 607, 608 (Tex.1960); *Bradshaw v. McDonald*, 147 Tex. 455, 216 S.W.2d 972, 974 (1949); see also 2 C. McCormick & R. Ray, Texas Law of Evidence § 1641(a) (Texas Practice 2d ed. 1956). The same exception has been applied to the transfer of items other than realty in *Hillcrest*, supra, (transfer of a furniture leasing agreement) and *Kaufman v. Blackman*, 239 S.W.2d 422, 427 (Tex.Civ. App.–Dallas 1951, writ ref'd n. r. e.) (transfer of an insurance policy).

■ Appellants try to distinguish these cases from the one at hand, contending that the earlier cases applied the parol evidence exception only in situations where a claimant was seeking to admit parol to protect some *equitable* claim in property, especially the equity of redemption. They claim the Bank had no such interest to protect at the time of the suit since the note and lien contract had already been transferred to the permanent lender. Consequently, no

equitable claim was asserted which would preclude the application of the general rule excluding all evidence except the assignment instrument itself. The only authority appellants cite in support of their position is *Berman, Fichtner & Mitchell, Inc. v. Kahn*, 573 S.W.2d 869 (Tex.Civ.App.–Eastland 1978, no writ) in which parol evidence was excluded which would have shown that the "assignment" of an interest in a third–party note discharging defendant's debt to plaintiff for attorney's fees was intended only as security for a debt. The court seems to imply that parol evidence will not be admissible unless the grantor's equity of redemption is in jeopardy. This is certainly not the case in light of *Hillcrest*, supra, where parol was admitted to protect rights to rent payments, or in *Kaufman v. Blackman*, supra, where the proceeds to an insurance policy were at stake. The court in *Berman* seeks to distinguish the *Hillcrest* case on the grounds that a separate instrument, and not oral testimony, was used to show the true nature of the transaction. We do not believe one type of parol evidence is distinguishable from another, and hold that oral testimony is equally admissible to show the intent of the parties in such a situation.

The Bank does have an interest at stake in this lawsuit and that is to avoid liability under the consumer credit laws by showing that it was not a "subsequent assignee" of Phillip Watson. It would seem inequitable to subject the Bank to liability not contemplated by the statutes by preventing the admission of evidence which would reveal the true nature of its association with Watson.

■ Accordingly, and in light of the abundant authority which would support the admission of parol to show the existence of a security interest, we feel the trial court was correct in considering the testimony of Cad Williams and John Davis to show that

the "Transfer of Lien" from Watson to the Bank was actually intended to create a security interest. It should also be noted that there is a definite tendency to relax the operation of the "parol evidence rule" when a stranger to the writing is involved. 3 Corbin, Contracts § 596 (1960) at 576.

Other evidence presented at trial supports the court's presumed finding that no direct assignment of the Garners' note was made to the Bank. If the Bank had received full interest in the note, it would seem very likely that payments would be made directly to it rather than to Watson. However, Mr. Garner testified that all payments were made to Watson and that at no time did he pay any check or cash to the Bank. Furthermore, Garner admitted that neither he nor his wife had any dealings or contact with the Bank regarding interim financing and that he had no personal knowledge of the arrangement between Watson and the Bank for that purpose. It is also significant that Watson never received any purchase money when he gave the Bank possession of the note, deed of trust and lien contract. Instead, he executed his own note for $38,000 (approximately $4,000 less than the amount of the Garners' note), and the only funds he ever received from the Bank were those which he periodically withdrew to finance construction in accordance with the loan agreement.

■ In the alternative, appellants argue that even if the Bank did hold only a security interest in the note, it was still a "subsequent assignee" within the meaning of the law and should be held liable for Watson's failure to disclose. While there is a dearth of material dealing with this issue, the little authority we do find indicates that the creation of a mere security interest in property does not extend liability to the holder of that interest.

Included in the legislative history of the Federal Truth In Lending Act is the Report of the Committee on Banking, Housing and Urban Affairs, S.Rep. No. 93–278, p. 26, where there is a summary pertaining to "Liability of Assignees." This summary states in pertinent part:

This section (§ 115 of the Truth in Lending Act) permits consumers to sue the *purchaser* of an installment loan or contract or similar instrument for a violation of Truth in Lending if the violation is apparent on the face of the instrument. (Emphasis added.)

Apparently, Congress intended for liability to be limited to *purchasers* of installment loan contracts and excluded from the definition of assignee one who takes such contracts as collateral for a loan only. It is logical to assume that this same limitation of liability would apply to the holder of a security interest in a note for the purchase of real property.[6]

State law also supports the position that the definition of "assignment" does not include the creation of a security interest. In *Highland Park v. Salazar*, 555 S.W.2d 484, 488 (Tex.Civ.App.–San.Antonio 1977, writ ref'd n. r. e.), the court stated that a distinction must be made between an assignment and the creation of a lien (in a savings account composed of worker's compensation benefits):

The creation of a lien is not an assignment, the two being distinguished by the fact that a lien is merely a charge on property while an assignment creates an interest in property.

Likewise, in *Vaughan v. John Hancock Mut. Life Ins. Co.*, 61 S.W.2d 189, 190 (Tex.Civ. App.–Ft. Worth 1933, writ ref'd), the court declared:

We cannot agree that any such definition can be given the word "lien" as makes it mean "sale," "transfer," "delivery," "as-

---

6. In Clontz, *Truth–In–Lending Manual*, (4th ed., 1976) ¶ 5.03[9] at 5–34, the author talks about maintaining an action against subsequent assignees and warns that

" 'Policing activity' will be required of the bank, where it is *purchasing* chattel paper or notes secured by security interests in real property from the original creditor."

*signment*," or "bill of sale".... (Emphasis added.)

We hold therefore that there was admissible evidence to show that the Bank was the holder of a mere security interest in the Garners' note and lien contract, and that as such, it was not a "subsequent assignee" of Watson within the meaning of the state and federal consumer credit laws. The affirmation of this implied finding in the trial court judgment makes in unnecessary to consider appellants' remaining points of error. The judgment of the trial court is therefore affirmed.

