In re **APEX OIL COMPANY**, Debtor.

**ARTOC BANK AND TRUST, LIMITED, Appellant,**

v.

**APEX OIL COMPANY, and the Other 53 Entities that are Debtors and Debtors in Possession, Appellees.**

No. 91–3322.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1992.

Decided Sept. 23, 1992.

As Modified on Denial of Rehearing Nov. 19, 1992.

John D. Quinn, Washington, D.C., argued (Richard G. Fehrenbacher and Stephen Sale on brief), for appellant.

Jesse R. Pierce, Houston, Tex., argued (John A. Moe, II, St. Louis, Mo., on brief), for appellees.

Before RICHARD S. ARNOLD, Chief Judge, FRIEDMAN,* Senior Circuit Judge, and LOKEN, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

Artoc Bank and Trust, Limited (Artoc), as assignee of the accounts receivable of Uni Refining, Inc. (Uni), filed a claim in this bankruptcy proceeding against the debtor, Apex Oil Company (Apex), for the payment of two invoices. Apex argues that it had a right to offset the amount of those invoices against money Uni owed to Apex. Artoc claims that Apex had notice of the assignment to Artoc before it engaged in the setoffs, and therefore is still liable to Artoc for payment of the accounts. The Bankruptcy Court held that Apex did not have notice of the assignment and granted summary judgment to Apex. The District Court affirmed. We believe that summary judgment should not have been granted, and that further proceedings are required before Artoc's and Apex's conflicting claims can be resolved. We therefore reverse and remand.

I.

This case arises from a security agreement between Artoc and Uni entered into

---

* The Hon. Daniel M. Friedman, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

in 1979. Under the agreement, Uni assigned its present and future accounts receivable and the proceeds thereof to Artoc. Artoc also required Uni to place two stamped notices on each of its invoices. The notices stated:

> Note: Artoc Bank and Trust, Limited, Nassau, Bahamas has been granted a *security interest* in the amount of this invoice. Please direct payment as follows:

> NOTE: PLEASE MAIL PAYMENT TO UNI REFINING, INC.
> c/o ALLIED BANK OF TEXAS
> P.O. BOX 3331
> HOUSTON, TEXAS 77001
> PLEASE DIRECT BANK TRANSFERS TO ALLIED BANK OF TEXAS HOUSTON INTERNATIONAL BANKING DEPARTMENT FOR CREDIT TO OUR ACCOUNT 002–062–8

(Emphasis added). The Allied Bank address on the second stamped notice was a "lockbox" account that Artoc used for collection of all of Uni's accounts receivable.

In 1980, Uni sold petroleum products to Apex. The invoices for each transaction contained the stamped notices. Apex, accordingly, made payments to the "lockbox" account. In December of 1980, however, rather than making payment to the lockbox account, Apex offset amounts that it owed to Uni under some of the invoices bearing the stamped notices against amounts Uni owed to Apex under different contracts.

In February of 1981, Uni filed a petition for relief in bankruptcy. In December of 1981, Artoc filed suit against Apex and other debtors of Uni in the United States District Court for the Southern District of Texas to recover the amount of allegedly improper setoffs and direct payments made by the defendants to Uni. On November 5, 1984, the Court granted summary judgment to several of the defendants (not including Apex) holding, as to the allegedly improper direct payments, that the stamped notices were insufficient to satisfy the notice of assignment and notice of payment required by § 9.318(c) of the Texas Business and Commerce Code. With regard to the setoffs, the Court held that the

defendants did not have notice of the assignment before they engaged in the setoffs and that the setoffs were proper under § 9.318(a)(2). The case was later reassigned, and the new judge granted Artoc's motion for reconsideration of the November 5, 1984 opinion and order. The judge had not yet issued a decision on reconsideration when Apex filed its petition for bankruptcy in December of 1987, staying the Texas action as to it.

After Artoc filed a proof of claim in the Apex bankruptcy case, Apex moved for summary judgment. The Bankruptcy Court granted Apex's motion, adopting the Texas District Court's decision regarding the sufficiency of the stamped notices and holding that Apex had no other actual notice of the assignment. The Bankruptcy Court found, however, that the stamped messages did give notice to Apex that Artoc had a security interest in Uni's accounts receivable. The District Court affirmed the judgment of the Bankruptcy Court, holding that Artoc did not satisfy either notice requirement of § 9.318(c). Artoc appeals.

## II.

This case turns on two principal issues: the applicable law and whether that law's notice requirement was satisfied by Artoc. The parties agree that Texas law applies. The question is which Texas law—Texas common law or the Texas Business and Commerce Code? (This is what the UCC is called in Texas.) If the UCC applies, which section governs this situation—§ 9.318(a) or (c)?

Artoc argues that the common law of Texas, not the UCC, applies to setoff transactions. The basis of this argument is § 9.104, which states that Article 9 "does not apply ... to any right of set-off." Additionally, Artoc cites *First National Bank of Grand Prairie v. Lone Star Life Insurance Co.*, 529 S.W.2d 67, 68 (Tex.1975), which holds that Article 9 does not control a bank's right to exercise a setoff against a depositor's funds. While we agree with Artoc that a bank or other creditor need not comply with Article 9 and its filing

requirements to exercise its right to setoff, we do believe that Article 9 governs the priority between that right to setoff and a perfected security interest. Indeed, we can imagine few situations which fit more snugly within Article 9's domain than a priority dispute between an account debtor and a secured party.

■ Our task now is to determine which UCC provision applies to the setoff engaged in here. Artoc claims § 9.318(a) applies; Apex claims the appropriate section is § 9.318(c). Section 9.318 states in pertinent part:

> (a) Unless an account debtor [Apex] has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in Section 9.206 the rights of an assignee [Artoc] are subject to
>
>> (1) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and
>>
>> (2) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.
>
> (b) ...
>
> (c) The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor.

Subsection (c) refers to when an account debtor is authorized to pay the assignor. In contrast, subsection (a) refers to when setoffs and other claims or defenses made by the account debtor are good. Although the end result of a setoff against the assignor and a payment to the assignor is the same to the two parties involved, a payment and a setoff are treated differently under Article 9. Subsection (c) applies when a secured party (assignee) sues a debtor for improper payment. The debtor paid the money owed, but he paid it to the wrong person—that is, the assignor. Subsection (c) protects account debtors who have already paid from having to pay twice on the same debt. Subsection (a), on the other hand, applies when the secured party sues the debtor to recover money owed to him as the assignee of an account. In this situation, the debtor has made no improper payment, because he has made no payment at all. The debtor then raises as a defense against the assignee's claim that he has a right to an offset against the assignor (or, as here, that he has already exercised that right). Subsection (a) determines whether or not that offset is proper against the assignee.

■ Apex cites numerous Texas cases to support its position that the assignee must notify the account debtor both of the assignment and of the fact that payment is to be made to the assignee under subsection (c). None of these cases, however, involves a setoff. In every case, the account debtor had actually paid the assignor. Although we have found no case actually stating that (a), not (c), governs setoff transactions, in every case in which setoff, rather than payment, was involved, (a) was applied. See, *e.g.*, *Barclaysamerican/Business Credit, Inc. v. E & E Enterprises, Inc.*, 697 S.W.2d 694 (Tex.App.1985) (the court held (a)(2) governed priority between an account debtor's right to a setoff and the secured party's security interest in the assignor's accounts receivable). Had Apex paid Uni, rather than engaged in a setoff, we would agree with Apex that subsection (c) would control. The fact is, however, that Apex did not pay Uni. Except for the two setoffs, it had been making payments to the lockbox account controlled by Artoc, but this case arises out of the setoffs, not the payments. Thus, this situation is governed by § 9.318(a).

■ Subsection (a) treats claims or defenses arising from the contract and all other claims of the account debtor against the assignor differently. Apex's setoffs arose not from the specific invoices that Artoc has a security interest in, but from

other contracts under which Uni had purchased products from Apex. Thus, this situation is controlled by (a)(2), which provides that an account debtor like Apex may assert a claim as long as the claim accrued "before the account debtor receive[d] notification of the assignment." The question before us, then, is whether Apex received notice of the assignment before it engaged in the setoffs?[1] We hold that it did.

Artoc argues that the stamped notices on the invoices constituted notification of the assignment for purposes of § 9.318(a)(2). Apex argues, and the courts below held as a matter of law, that the stamped messages did not satisfy the notice-of-assignment requirement. There is no dispute, however, and in fact the Bankruptcy Court stated, that the stamped notices did inform Apex that Artoc had a security interest in the amounts due under the invoices. Apex argues, and the courts below agreed, that notification of a security interest in the amount due is not the same as notification that the amount due has been assigned. We disagree.

■ Often, the law will attach a different meaning to the same word depending upon the area of law in which it is being used. For example, an offer for purposes of § 5 of the Securities Act of 1933 may or may not be an offer under general contract law. Similarly, an assignment for purposes of Article 9 may or may not be an assignment under general property law. An assignment has traditionally been defined in the law of contracts as a transfer by the assignor of all rights in the property assigned to the assignee. It effects an absolute and irrevocable transfer of ownership. Article 9, which governs secured transactions, uses the term assignment, but under Article 9 it does not always mean a complete and absolute transfer of owner-

ship. See Texas Bus. & Com.Code Ann. § 9.102(b) (states that Article 9 applies to security interests created by contract, including an assignment). Indeed, Article 9's primary purpose is to regulate security agreements, not transfers or sales, which are governed primarily by Article 2. When an assignment is intended for purposes of security, which § 9.102 permits, it is subject to Article 9.

Accounts-receivable financing, which is what occurred between Uni and Artoc, involves the "assignment" of the debtor's accounts receivable to the secured party as security for the debtor's obligation to repay money lent by the secured party. Such an assignment is, for all practical purposes, a security interest in the accounts receivable. Neither of the parties disputes that Uni "assigned" its present and future accounts receivable to Artoc for purposes of security. Also, Apex does not disagree that the stamped note gave it notice that Artoc had a security interest in the amount due. Apex denies, however, that notification of the security interest was ipso facto notification of the assignment.

■ We see no meaningful difference between a security interest and an assignment for purposes of security. In fact, they appear to be the same thing under Article 9. The cases cited by Apex do not persuade us differently. In *Southern Rock, Inc. v. B & B Auto Supply,* 711 F.2d 683 (5th Cir.1983), the court was concerned with whether the parties' agreement was intended to create a security interest or a complete assignment. It has no bearing on this case, where it is clear that a complete assignment—that is, an immediate and irrevocable transfer of all rights in the accounts—was not intended. *Garner v. East Texas National Bank of Palestine,* 608 S.W.2d 939 (Tex.Civ.App.1980), also cited by Apex, is irrelevant since it did not even involve Article 9. On the other hand, *Estate of Haas v. Metro–Goldwyn–Mayer,*

---

1. The Bankruptcy Court adopted the opinion of the Texas District Court which held that the stamp was not sufficient to constitute notice of the assignment. The Bankruptcy Court stated that it had no reason to question the Texas court's expertise in interpreting Texas law. Because the motion to reconsider was granted, but the merits were never decided, we do not know what the Texas Court would ultimately have decided. The earlier decision, now made tentative by the order granting reconsideration, is not the law of the case, and we do not have to follow it. Nor need we defer to any "expertise" on the part of the Texas federal court. Our duty is to decide questions of state law *de novo.* *Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

**1370**

*Inc.,* 617 F.2d 1136 (5th Cir.1980), involved an improper payment by the account debtor to the assignor. The issue was whether the assignee had given proper notice under the equivalent of subsection (c). The court assumed without deciding that notice of a security interest was notice of an assignment, but found that direction of whom to pay had not been given and held for the account debtor. Finding no Texas case holding differently, we hold that notice of a security interest constitutes notice of an assignment for purposes of security under Article 9.

■ At the very least, the notice should have raised a question in the mind of Apex, causing it to inquire about the security interest before setting off its account. *Robert Parker's Truck & Trailer Repair, Inc. v. Speer,* 722 S.W.2d 45, 48 (Tex.App. 1986), held that notice under § 9.318 "embraces those things that a reasonably diligent inquiry and exercise of the means of information at hand *would have* disclosed." If Apex was unsure about the significance of the stamped notice, it had a duty to inquire before exercising any right it might otherwise have had to set off. At least where millions of dollars are at stake, as was the case here, a company acts unreasonably if it sets off a debt to it from another transaction, after being given notice of another's security interest in the amount due.

### III.

Finally, Apex argues that even if Artoc gave sufficient notice of the assignment, it is estopped to recover on the invoices since it knew Apex was engaging in setoffs with Uni and took no action to stop this practice. Neither the Bankruptcy Court nor the District Court reached this issue. They did not determine what the law requires to establish the defense of estoppel, nor did they find the facts to refute or support it. Therefore, the issue is not properly before us. We leave it for development on remand to the Bankruptcy Court.

### IV.

We reverse and remand to the District Court. That Court is instructed to vacate its judgment and remand the cause to the Bankruptcy Court with instructions to enter judgment for Artoc, unless it determines that Artoc is estopped to recover on the debt. As to the merits of the estoppel theory, we express no view. If judgment is entered against Apex, the Bankruptcy Court should first consider the issues of prejudgment interest and attorneys' fees. These issues are not concluded by this opinion, and we express no view on their merits.

It is so ordered.

### ORDER

Nov. 19, 1992.

The petition for rehearing is denied.

The Court on its own motion modifies the directions contained in the opinion previously filed by adding the following sentence at the end of the opinion: [Editor's Note: Modification incorporated for publication].