# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3128

_____

|  |  |  |
|---|---|---|
| In re Apex Oil Company, | * | |
| | * | |
| Debtor | * | |
| | * | |
| ----------------------------- | * | |
| | * | |
| Apex Oil Company, | * | On Appeal from the United |
| | * | States Bankruptcy Appellate |
| Appellant, | * | Panel of the Eighth Circuit. |
| | * | |
| v. | * | |
| | * | |
| Artoc Bank & Trust Limited, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  June 13, 2001
Filed:  July 22, 2002

_____

Before WOLLMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Apex Oil Company appeals the Bankruptcy Appellate Panel's decision to affirm the Bankruptcy Court's order allowing a claim of Artoc Bank & Trust in Apex's bankruptcy for $4,651,850.  This amount represents about $1.7 million for

wrongful setoffs by Apex, $1.19 million in prejudgment interest on that claim, and $1.76 million in attorneys' fees to Artoc as the prevailing party. Apex argues that the Court erred in rejecting its argument that Artoc was estopped to file its claim. It also contends that the attorneys' fees awarded were unreasonable. We affirm the decision to allow Artoc's claim for the amount of the setoffs, including the award of prejudgment interest. However, we reduce the allowed attorneys' fees from $1,761,850 to $1,302,860. The attorneys' fees awarded by the Bankruptcy Court were excessive and not supported by sufficient evidence.

I.

This dispute between Apex Oil and Artoc Bank began over 20 years ago. Artoc was a secured lender to Uni Refining (Uni). As collateral for the financing, Uni assigned Artoc its accounts receivable. In 1980, Uni sold petroleum products to Apex. The invoices for these sales were stamped with a notice stating that Artoc had been granted a security interest in the amount of the invoice and directing payment to a "lockbox" account controlled by Artoc. In December 1980, Apex offset the invoice amounts it owed to Uni against amounts Uni owed Apex under different contracts. In February 1981, Uni filed for bankruptcy. In December 1981, Artoc filed suit in Texas against Apex and ten other companies to recover the amount of setoffs and direct payments made by those defendants.

Apex then filed for bankruptcy. The Texas lawsuit was therefore stayed as to Apex in 1987. Artoc filed a proof of claim in Apex's bankruptcy based on the same grounds as the Texas lawsuit, that Apex engaged in wrongful setoffs. The Bankruptcy Court rejected this contention and held that the setoffs were permissible because Apex lacked sufficient notice of Artoc's security interest in Uni's accounts receivable. The District Court affirmed.

This Court reversed. Artoc Bank &Trust, Ltd.v. Apex Oil Co., 975 F.2d 1365, 1366 (8th Cir. 1992). We held that Apex received sufficient notice of Artoc's interest as an assignee of Uni's accounts receivable, so that Apex acted wrongfully in offsetting the invoices against amounts Uni owed it. Id. at 1370 (applying Tex. Bus. & Comm. Code Ann. § 9.318(a)). We noted that Apex made an estoppel argument, but that because neither the Bankruptcy Court nor the District Court had reached this issue, we would "leave it for development on remand to the Bankruptcy Court." Id. We also stated that "[i]f judgment is entered against Apex, the Bankruptcy Court should first consider . . . attorneys' fees" but we expressed no view on the merits of this issue. Id.

On remand, the case stalled for several years. During this period, both parties filed motions for summary judgment, and Apex conducted discovery related to its estoppel defense. In 1996, the Bankruptcy Judge held a status conference. At this meeting, Apex's pending motion for leave to supplement the record was discussed. The Court stated that it would rule in writing on that motion after Artoc responded. Artoc did respond. However, no order was ever entered on that motion. Three years later, in 1999, the Court filed an order granting Artoc's motion for summary judgment and allowing its claim for $1.7 million. Apex moved for reconsideration. The Court denied that motion, rejected Apex's argument that it was entitled to a 28 per cent. credit against Artoc's claim as a result of an order in the Uni bankruptcy case, and allowed Artoc to add to its claim pre-petition attorneys' fees of $1,761,850. The Court also allowed $1.19 million in prejudgment interest.

Apex appealed these orders to the Bankruptcy Appellate Panel (BAP), which affirmed the Bankruptcy Court in all respects. Apex then filed the instant appeal, alleging error both on the merits of its estoppel defense and on the award of attorneys' fees.

## II.

Apex makes several arguments to support its position that Artoc should be estopped to recover the amount of the setoffs. None of them persuades us.

Apex's first complaint is that it was prejudiced because it was not allowed to supplement the summary-judgment record. As explained above, Apex's motion to supplement was apparently never ruled upon, except that it was denied by necessary implication when the Bankruptcy Court granted Artoc's motion for summary judgment. Nevertheless, we see no reversible error in this situation because Apex does not convince us that its inability to submit further evidence caused it any meaningful prejudice. First, Apex has previously stated that no material facts were in dispute on the issue of estoppel. It made this representation both in its 1990 motion for summary judgment and in its 1992 brief to this Court. Apex has not demonstrated to this Court that the alleged "new" evidence it obtained in 1993 depositions and document productions would materially alter a court's analysis of its estoppel defense. Indeed, Apex has not specified the content of this evidence at all, beyond a general statement that it would support its arguments. This is insufficient to show prejudice. We affirm the BAP on this issue.

Next, Apex urges this Court to reverse, on the merits, the Bankruptcy Court's determination that Artoc is not barred from its claim by estoppel. We decline to do so. The Bankruptcy Court correctly applied the facts at hand in deciding that Apex could not satisfy the five elements of estoppel under Texas law. Traylor v. Gray, 547 S.W.2d 644, 652 (Tex. Civ. App. 1977, writ ref'd n.r.e.). For one thing, Apex behaved unreasonably in not making inquiry of Artoc after receiving notice of Artoc's security interest. Further, we agree with the Bankruptcy Court that Apex's other estoppel-related theories must fail. Apex simply has not shown any court in this lengthy litigation that Artoc engaged in any action required to support an estoppel defense.

-4-

The parties also disagree over the applicability of an order entered in 1983 by the court that confirmed Uni's plan of reorganization under Chapter 11 of the Bankruptcy Code. That order stated that any creditor "against whom money damage judgments in favor of Artoc Bank and Trust, Ltd. are awarded in the District Court Action shall receive" a 28 per cent. credit against such judgments. Appellant's App. 295. We decline to enforce this order. We agree with the BAP that the administration of Uni's plan, which is the subject matter of the order, is not properly before us. Apex cites no excuse for its neglect, from 1983 until 1999, in not bringing this order to the Bankruptcy Court's attention so that any claim based upon such a credit could be appropriately considered on a timely basis. As with the rest of the estoppel arguments, the Bankruptcy Court and the BAP properly resolved this issue in Artoc's favor.

## III.

The Bankruptcy Court awarded Artoc a total of $1,761,850 in attorneys' fees. This amount reflects the charges of two law firms. Breed, Abbot & Morgan was awarded $316,850 in pre-petition hourly fees. Fehrenbacher, Sale & Quinn was awarded $1,445,000 for pre-petition work, originally contracted for on a 50 per cent. contingency basis. We hold that Artoc did not satisfy its burden of showing that the total amount of fees awarded was reasonable and necessary. Specifically, we find abuse of discretion in the size of the fee award for work done by Fehrenbacher, Sale & Quinn and reduce this award from $1,445,000 to $986,010. However, we affirm the award for fees submitted by Breed, Abbot & Morgan.

Under Texas law, an assignee who recovers against an account debtor is entitled to recover the attorneys' fees that accrued from the pursuit of its claim. See Taubenhaus v. Jung Factors, Inc., 478 S.W.2d 149, 151-52 (Tex. Civ. App. 1972, no writ history). The party requesting the attorneys' fees must prove that the amount requested is "reasonable and necessary." Stewart Title Guaranty Co. v. Sterling, 822

S.W.2d 1, 10 (Tex. 1991). The Texas Supreme Court has delineated eight factors that should be considered in determining the reasonableness of a fee.

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997). While these factors guide a court in setting a fee, trial courts possess "broad power and discretion" in determining fees. Walton v. LaBarge (In re Clark), 223 F.3d 859, 863 (8th Cir. 2000). Therefore, our review of an attorneys' fee award is for abuse of discretion. See Vela v. City of Houston, 276 F.3d 659, 679 (5th Cir. 2001).

Applying this standard, we affirm the attorneys' fees allowed for work performed by Breed, Abbot & Morgan (Breed, Abbot). Artoc supported its request for $316,850 in hourly fees paid to this firm with specific and credible hourly time records. Breed, Abbot represented Artoc in its suit for six years and conducted much of the discovery. Further, because it discontinued its representation of Artoc before Apex entered bankruptcy in 1987, it is certain that any fees paid to it were for pre-petition legal services. Therefore, we uphold the Bankruptcy Court's determination that Artoc should be allowed as part of its claim $316,850 for attorneys' fees paid to Breed, Abbot.

However, we reduce the fees awarded for the work of Fehrenbacher, Sale & Quinn (Fehrenbacher). Our review of the evidence on the these fees firmly convinces us that the amount allowed for this firm's work was too large. It was an abuse of discretion to allow $1,445,000 on the facts at hand. We reduce the award to $986,010, which, although still a significant amount for one year of legal work, is a reasonable figure based on the evidence Artoc submitted.

The Arthur Andersen factors again guide our analysis of the reasonableness of a fee award. As to the first factor, the time and labor spent, our review is hindered by Fehrenbacher's decision not to keep contemporaneous time records for its work for Artoc. This lack of records is important, notwithstanding that Fehrenbacher had a contingency fee arrangement with Artoc. The record does contain "reconstructed" time records for Fehrenbacher's pre-petition work. These records are, at best, oversimplified. For example, an entire month's legal work for three principals is presented in blocks of 150 hours with identical descriptions for all three attorneys. Appellee's App. 457-58. While we recognize the difficulty, if not impossibility, of recalling legal work performed 15 years ago, it is wrong to make Apex responsible for Fehrenbacher's lack of diligence in keeping time records. We do not question the integrity of Fehrenbacher's attorneys in doing their best to reconstruct time records. However, the fact remains that with evidence of this conclusory nature, it is difficult

-7-

to review adequately whether the time and labor Fehrenbacher spent on this case was justified.

We will not attempt this daunting task. Even assuming that the 4,883 hours allegedly worked on this matter in one year is the correct figure, we hold that a fee award of $1,445,000 is too large to compensate Fehrenbacher for working these hours. The Bankruptcy Court did not mention an hourly rate or a lodestar multiplier in its opinion. Instead, it simply stated that an award of 50 per cent. of the claim was reasonable. However, Artoc offered expert testimony to justify Fehrenbacher's fee in which its expert used $250 for the hourly rate and a lodestar multiplier of 2.3. Appellee's App. 447. This hourly rate and multiplier, which produce a fee equal to 50 per cent. of the allowed claim, exceed what is necessary to compensate Fehrenbacher for this case. Therefore, we re-calculate the fees using a lower hourly rate and a lower multiplier.

Artoc's expert stated that the fee should be calculated using $250 as the hourly rate. However, in the year Fehrenbacher worked on this matter before Apex filed for bankruptcy (from December 1986 to December 1987), the firm's normal hourly rate for principals was $175. Appellee's App. 453. Artoc's expert opined that $175 was a "very low rate for a principal of a law firm in a major city" and used a baseline rate of $250 instead. Appellee's App. 447. We see no justifiable reason for this increase. While some other firms may have charged $250 per hour in 1986-87, Fehrenbacher did not. Presumably Fehrenbacher set its hourly rate at a competitive level based on its size, expenses, experience and reputation as a firm, and other market forces. See To-Am Equip. Co. v. Mitsubishi Caterpillar Forklift Am., Inc., 953 F. Supp. 987, 998 (N.D. Ill. 1997). It was an abuse of discretion to depart from Fehrenbacher's normal hourly rate in this matter. If it was the correct amount to charge other clients, it is the correct amount for work on Artoc's case. We use $175 per hour in our calculations of the base fee.

After raising Fehrenbacher's hourly rate, Artoc's expert applied a multiplier of 2.3 This factor is multiplied by the amount of the fees after the base fee of total hours and hourly rate are calculated. Lodestar multipliers are permissible under Texas law. See Borg-Warner Protective Services Corp. v. Flores, 955 S.W.2d 861, 870 (Tex. App. 1997, no writ history). In this case, Artoc's expert stated that a lodestar enhancement was justified by the complexity of the subject matter, the quality of the representation, and the contingent nature of the legal services. Appellee's App. 447. The Bankruptcy Court also relied on these reasons to justify its award of an amount equal to 50 per cent. of the claim. While these considerations are present in Arthur Andersen and are appropriate concerns in determining a fee, a multiplier of 2.3 was too large. The facts, as applied in accordance with the three factors listed as relevant by the Bankruptcy Court, do not support such a sizeable increase in the base fee.

First, we disagree with the Bankruptcy Court that the complexity of the legal work necessitated any increase. While the lower courts and our Court disagreed over the merits of this case, this is an everyday occurrence and does not suffice to make a matter "complex." Multi-million dollar cases are rarely simple, and we agree this case probably was not either. But we do not see anything unusually challenging about this litigation. Cf. Vela, 276 F.3d at 680 (finding that managing and analyzing 2,600 individual claims in area of governmental-employee-relations law required skill of the highest order.) Further, in light of the very substantial number of hours Fehrenbacher allegedly worked on this case during 1986-87, we think any complexity has already been taken into account in the hourly calculations of the base fee.

On these facts, we also disapprove of using expedited trial preparation as a justification for enhancing the fees. The significant number of hours expended in Fehrenbacher's first year of representing Artoc already reflect the fact that quick trial preparation was required. The reconstructed time records show that Fehrenbacher spent 4,883 hours in one year. This is a huge figure, representing about 30 hours per week for each of three principals in the Fehrenbacher firm. Presumably these hours

were being used for expedited trial preparation, which occurred before Apex filed for bankruptcy. Since Fehrenbacher's reconstructed time records are being allowed to stand, it therefore already recovers for the time it spent preparing for trial.

We agree with the Bankruptcy Court that the third factor, the uncertainty of success, merits an enhancement in Fehrenbacher's base fee award. Apex strenuously argues that the Bankruptcy Court erred because it allowed fees for Fehrenbacher's work equal to what that firm would have been entitled to had the contingency agreement been enforced. Apex is correct that Arthur Andersen prohibits using the contingency agreement alone to determine the reasonableness of a fee. 945 S.W.2d at 818. However, we do not believe that is what happened here. The Bankruptcy Court listed and considered other Arthur Andersen factors in setting the fee. There was no per se legal error.

Although we reject that basis for reducing the fee award, we agree with Apex that a fee award that equaled 50 per cent. of the recovery was, in fact, excessive for the pre-petition work done in this case. The multiplier of 2.3, which produced a figure of $1,445,000 for fees, exceeds what is reasonable and necessary to compensate Fehrenbacher for the risk of representing Artoc. We agree with the Bankruptcy Court that this litigation had an uncertain prospect of success and that Artoc was a high-risk client. These facts are supported by evidence. Artoc's former counsel submitted affidavits explaining why it believed Artoc was a high-risk client, with a small chance of prevailing in this litigation. Further, the uncertainty of success in Artoc's case is also reflected in the fact that the only counsel Artoc could obtain demanded a high contingent fee. However, the risk was not so great that a 2.3 multiplier was necessary or reasonable. Therefore, we approve of a fee enhancement based on this factor, but reduce the multiplier from 2.3 to 1.2. We believe this smaller number still adequately compensates Fehrenbacher for the risk it bore in representing Artoc in this litigation and also produces an appropriate total fee.

Fehrenbacher's reconstructed time records and hourly rate schedule for each employee who worked on this matter show a total fee of $821,675. Appellee's App. 465. We adopt this number as the base fee. Applying a lodestar multiplier of 1.2, we conclude that Artoc should be allowed $986,010 as part of its claim for Fehrenbacher's pre-petition services. This amount satisfies the reasonable-and-necessary standard, is justified by the <u>Arthur Andersen</u> factors, and, in light of all the facts, reimburses Fehrenbacher for its pre-petition work on this case.

## IV.

As explained above, we affirm the decision to allow Artoc's claim of $1.7 million, plus prejudgment interest of $1.19 million. Artoc is not estopped to recover for the wrongful setoffs. Because Artoc is the prevailing party, it is entitled to reasonable and necessary attorneys' fees. However, the fees allowed by the Bankruptcy Court did not meet this standard and were excessive. Therefore, for the reasons explained above, we reduce the allowed fees from $1.76 million to $1,302,860. This smaller amount is reasonable and necessary to compensate Breed, Abbot and Fehrenbacher. Accordingly, the judgment of the BAP is affirmed in part and reversed in part, and this case is remanded to the BAP with instructions to enter judgment in accordance with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-