# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

—————

02-6017MN

—————

| | | |
|---|---|---|
| In re: Stanley Reid Henricksen | * | |
| | * | |
| Debtor | * | |
| | * | |
| Hartford Life and Accident | * | |
| Insurance Company | * | |
| | * | |
| Plaintiff - Appellee | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| v. | * | District of Minnesota |
| | * | |
| Stanley Reid Henricksen | * | |
| | * | |
| Defendant - Appellant | * | |
| | * | |
| Nauni Jo Manty | * | |
| | * | |
| Defendant - Appellee | * | |

—————

Submitted: May 2, 2002
Filed: May 17, 2002

—————

Before KOGER, Chief Judge, SCHERMER and FEDERMAN, Bankruptcy Judges

KOGER, Chief Judge

Debtor Stanley Reid Henricksen appeals from the Judgment of the Bankruptcy Court[1] ordering Hartford Life & Accident Insurance Company ("Hartford") to turn over an annuity to the Trustee in his bankruptcy case, dismissing the Debtor's counterclaims against Hartford, and directing the Debtor to pay Hartford's attorney fees in the amount of $2,000.00. For the reasons that follow, the Judgment is affirmed.

Factual Background

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on January 10, 2001, listing an interest in an "ITT Hartford Annuity" in the amount of $9,875.00 and an IRA with Paine Webber in the amount of $41,000.00. He claimed exemptions for both of those accounts under Minn. Stat. § 550.37, subd. 24. The Trustee examined the Debtor concerning these assets at two § 341 meetings of creditors. Based on the Debtor's testimony at the § 341 meetings and her review of documents concerning these items, the Trustee determined that these assets, particularly the annuity, may not be exemptable under Minnesota statutes. As a result, she began negotiations with the Debtor's attorney regarding the Debtor's claimed exemptions therein.

In the course of these negotiations, the Trustee offered to settle with the Debtor what would otherwise have been objections to both the annuity and the IRA. The Trustee and the Debtor's attorney agreed that, in exchange for the Debtor's voluntary surrender to the Trustee of the annuity plus any post-petition increase in its value, the Trustee would abandon any potential objection to the exemption claimed in the IRA. On May 24, 2001, the Trustee filed a Notice of Settlement or Compromise which was consistent with this agreement. This Notice of Settlement or Compromise was served upon the Debtor and all creditors and parties in interest. No objections were filed by

[1] The Honorable Robert J. Kressel, United States Bankruptcy Judge for the District of Minnesota.

the stated deadline and, on June 28, 2001, the Bankruptcy Court approved the Settlement. The Order approving the Settlement was entered by the Bankruptcy Court on July 3, 2001, and became final on July 13, 2001. The Debtor did not appeal this Order.

On September 5, 2001, Hartford sent the Debtor an Agreement authorizing Hartford to turn the annuity over to the Trustee, pursuant to the Settlement approved by the Court. The Debtor refused to sign the Agreement and, on September 26, 2001, 75 days after the Court's Order approving the Settlement became final, the Debtor, *pro se*, filed a motion requesting that the Bankruptcy Court vacate the Order approving the Settlement. The Debtor alleged therein that Trustee had "blackmailed" him into agreeing to the Settlement by threatening to object to the exemption in the IRA which, according to the Debtor, was a baseless threat because the IRA was in fact exempt under Minnesota law. The Debtor further alleged that the Trustee had lied to the Court regarding the Debtor's testimony at the § 341 meeting concerning the nature of the annuity. In other words, the Debtor argued, in effect, that there had been no basis on which the Trustee could object to his exemptions and that he had therefore been coerced into a bad settlement, despite the fact that he had been represented by an attorney in the course of the negotiations.[2] On October 30, 2001, the Bankruptcy Court heard the Debtor's motion to vacate and the Trustee's response

_____

[2] According to an affidavit filed as an exhibit to the Trustee's response to the Debtor's motion to vacate the June 28 Order, the Debtor's attorney stated that he had advised the Debtor that, in view of the applicable Minnesota law, "there might be some question as to whether or not his annuity was exempt." For that reason, according to the Debtor's attorney, he recommended settlement to the Debtor and he agreed to settle. Further, the Debtor's attorney stated that it was only after the Settlement had been approved by the Court and the Trustee was attempting to enforce the Settlement did the Debtor "change his mind." At that point, according to the attorney, "I felt that I had to withdraw as his attorney in view of the fact that he was not following my recommendation, which I did on or about September 17, 2001." After his attorney withdrew, the Debtor began to represent himself, *pro se*.

thereto, and denied the motion by Order dated November 5, 2001. That Order became final on November 15, 2001, and the Debtor did not appeal.

On November 20, 2001, the Court received a letter from the Debtor, *pro se*, seeking reconsideration of the Court's November 5 Order. Treating the letter as a motion, the Court entered an Order on December 7, 2001, denying the request for reconsideration. That Order became final on December 17, 2001, and the Debtor did not appeal.

Faced with the competing claims to the annuity and possible double exposure thereon, Hartford filed an Interpleader Complaint on December 3, 2001, against the Debtor and the Trustee, requesting: (a) that the Trustee and the Debtor be restrained from instituting any action against Hartford for the recovery of the annuity proceeds; (b) that the Court require the Debtor and the Trustee to interplead their competing claims to the annuity proceeds; (c) that, upon transferring the annuity to such person as the Court may direct, Hartford be discharged from this action; (d) that the action between the Trustee and the Debtor proceed without Hartford's further involvement; and (e) that Hartford be awarded its attorney fees and costs associated with its prolonged involvement in this matter.

The Trustee answered Hartford's Interpleader Complaint, requesting that Hartford be ordered to turn over the annuity proceeds or, in the alternative, that the Court declare that the annuity constituted property of the estate. The Debtor, *pro se*, also responded to the Interpleader Complaint, alleging bad faith on the part of Hartford in connection with certain pre-petition garnishment attempts by a judgment creditor and again charging the Trustee with blackmail. The Debtor requested that the annuity be turned over to him and asserted counterclaims for attorney fees and punitive damages against Hartford. Hartford answered the Debtor's counterclaim, denying liability.

4

Several other items were filed by the parties in this case, including a February 8, 2002, Motion for Summary Judgment filed by the Trustee wherein she sought turnover of the annuity proceeds. The Court held a hearing on February 25, 2002, at the conclusion of which the Court made various oral rulings. The Court entered an Order for Judgment dated February 28, 2002, in which it memorialized the rulings made at the hearing, namely: granting Hartford's motion to interplead; granting the Trustee's Motion for Summary Judgment; denying the Debtor's request for summary judgment; ordering Hartford to turn over the annuity to the Trustee; dismissing the Debtor's counterclaim against Hartford; and ordering the Debtor to pay Hartford's fees and costs in the amount of $2,000.00. The Court entered a Judgment that same date. The Debtor, *pro se*, appeals from these judgments.

## Standard of Review

We review legal conclusions, including the grant of summary judgment, *de novo*, and findings of fact for clear error. Nelson v. Kingsley (In re Kingsley), 208 B.R. 918, 920 (B.A.P. 8th Cir. 1997) (citing Waugh v. Internal Revenue Serv. (In re Waugh), 109 F.3d 489, 491 (8th Cir. 1997); Christians v. Crystal Evangelical Free Church (In re Young), 82 F.3d 1407, 1413 (8th Cir. 1996); United States v. Roso (In re Roso), 76 F.3d 179, 181 (8th Cir. 1996)). The question before us on appeal is whether the record, when viewed in the light most favorable to the Debtor, shows that there is no genuine issue as to any material fact and that the Trustee was entitled to judgment as a matter of law. Id.

## Discussion

At the outset, we note that the Debtor does not appear to allege error in the Bankruptcy Court's granting Hartford's request for interpleader as such. Nevertheless, we conclude that the Bankruptcy Court did not err in finding that since Hartford conceded that it had no claim to the annuity, and since there was no question that Hartford was exposed to double liability thereon, it was appropriate to interplead the annuity. See Fed. R. Bankr. P. 7022 ("Persons having claims against the plaintiff

5

may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability.").

The crux of the Debtor's argument, rather, is that the Bankruptcy Court erred in refusing to order that the annuity be turned over to him as his exempt property. The Debtor insists that both the annuity and the IRA were exemptable all along and that he was coerced into the settlement as a result of the Trustee's threatened objections to the claimed exemptions, objections he contends were unfounded but which he could not financially afford to fight. He asserts that the Bankruptcy Court should therefore have declared the Settlement void and ordered Hartford to turn over the annuity to him as his exempt property.

The Trustee maintains that she entered into the settlement with the Debtor under the good faith belief, based on the Debtor's testimony at the § 341 meeting and the documentary evidence, that neither the annuity nor the IRA were exemptable under Minnesota law.

Minnesota statute provides an exemption for:

**Employee benefits.** (a) The debtor's right to receive present or future payments, or payments received by the debtor, under a stock bonus, pension, profit sharing, annuity, individual retirement account, Roth IRA, individual retirement annuity, simplified employee pension, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent of the debtor's aggregate interest under all plans and contracts up to a present value of $30,000 and additional amounts under all the plans and contracts to the extent reasonably necessary for the support of the debtor and any spouse or dependent of the debtor.

Minn. Stat. § 550.37 subd. 24.

In addition, in order for an annuity to be exempt under § 550.37, subd. 24, the contributions thereto must have come from the Debtor's employment.

6

> Minnesota law does not independently define stock bonus, pension, profit sharing, annuity, individual retirement account, individual retirement annuity or simplified employee pension plans. Therefore, the federal definitions of those terms must necessarily be used in interpretation of [Minn. Stat.] § 550.37, subd. 24. Under federal law, stock bonus, pension, profit sharing, annuity, individual retirement account, individual retirement annuity or simplified employee pensions . . . require wages to be earned to allow plan contributions by an employer and/or employee and/or self employed person under 29 U.S.C. § 1002(2)(A). This indicates a Congressional intent to tie annuity contributions to an employment relationship. Similarly, because [Minn. Stat.] § 550.37, subd. 24 parallels the Congressional statute, I find that the Minnesota legislature had a similar intent.

In re Raymond, 71 B.R. 628, 630 (Bankr. D. Minn. 1987) (citations and internal quote marks omitted). "Although the assets used to purchase the annuity can ultimately be traced to the fruits of the debtor's labors, such tracing is allowed only when the source itself is exempt." Id.

The Trustee concluded in this case that the annuity and IRA were not exempt primarily because, according to the Debtor's testimony at the § 341 meetings and the documentary evidence, the source of the funds had not been from the Debtor's employment. In addition, the Trustee had concluded that the annuity was not a retirement account, that the Debtor had control over the investments made with the assets in the annuity, and that the Debtor could withdraw the funds without penalty after he had held the annuity for a minimum period of time. As a result, the Trustee had concluded that the annuity was a financial investment rather than a retirement account acquired pursuant to an employment relationship and was therefore not exempt under § 550.37, subd. 24, and In re Raymond.

As mentioned above, the Debtor still maintains that the annuity and IRA were exempt all along and that he was coerced into the Settlement by the Trustee's threatened objections to his exemptions. However, as the Bankruptcy Court stated

at the conclusion of the hearing on this matter, the Trustee's right to the annuity had already been determined in the series of final orders as outlined above. We agree. The issue of the Trustee's entitlement to the annuity had already been decided by the Bankruptcy Court in its Order approving the Settlement and again in the Court's Order denying the Debtor's request for reconsideration. The Debtor did not appeal those Orders and the conclusions reached therein are therefore the law of the case. "The law of the case doctrine prevents relitigation of a settled issue in a case and requires that courts follow decisions made in earlier proceedings to insure uniformity of decisions, protect the expectations of the parties, and promote judicial economy." In re Alexander, 270 B.R. 281, 287 (B.A.P. 8th Cir. 2001) (citations omitted); In re Arleaux, 229 B.R. 182, 184-85 (B.A.P. 8th Cir. 1999).

Under Fed. R. Civ. P. 60(b), made applicable to this case by Fed. R. Bankr. P. 9024, a party may move for relief from judgment in order to present new evidence. See In re Arleaux, 229 B.R. at 184 n. 4. Even treating the Debtor's pleadings in this interpleader action as an attempt to present new evidence regarding the alleged coercion as a Rule 60(b) motion, the Debtor still could not prevail. The "evidence" the Debtor wished to present to the Bankruptcy Court in the Interpleader action[3] was not "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial." Id. (quoting Keiffer v. Riske (In re Kieffer-Mickes, Inc.), 226 B.R. 204, 210 (B.A.P. 8th Cir. 1998). "A Rule 60 motion is not the vehicle for restating old complaints and rearguing old evidence dealt with earlier in the proceedings." In re Kieffer-Mickes, Inc. 226 B.R. at 210. As a result, since the Debtor was simply re-arguing issues that were raised in previous proceedings, the Bankruptcy Court did not err in granting summary judgment in favor of the Trustee and ordering that the annuity proceeds be turned over to her.

---

[3] Particularly, the Debtor attempted to play a tape of the § 341 meeting at the Court's February 25, 2002, hearing on the Interpleader action. The Bankruptcy Court refused to permit the tape to be played.

8

In his brief on appeal, the Debtor also refers to a pre-petition failure on the part of Hartford to turn over the annuity to him, apparently alleging error in the Bankruptcy Court's dismissal of his counterclaim against Hartford. In sum, this allegation stems from a pre-petition attempt by a judgment creditor to garnish the funds in the annuity. The Debtor had claimed an exemption in those funds at the time of the garnishment and the judgment creditor did not object to those pre-petition exemption claims. The Debtor asserts, in effect, that Hartford should have turned over the funds to him at that time and that, therefore, the Trustee in his bankruptcy case would have no claim against the annuity. Hence, the Debtor asserted a counterclaim against Hartford in the instant Interpleader action based on Hartford's "bad faith" and other pre-petition violations. However, as the Bankruptcy Court pointed out, even assuming for the sake of argument that the Debtor had some sort of pre-petition cause of action against Hartford for its failure to pay over the annuity funds to him, any such cause of action became property of the estate when he filed his bankruptcy petition. As a result, the Debtor has no claim against Hartford regarding its pre-petition actions involving the annuity and the Bankruptcy Court did not err in dismissing his counterclaim against Hartford.

Finally, the Debtor does not appeal from the Bankruptcy Court's award of attorney fees in the amount of $2,000.00 in favor of Hartford.

Conclusion

For the foregoing reasons, we conclude that the Bankruptcy Court did not err in granting Hartford's request to interplead; granting the Trustee's Motion for Summary Judgment; denying the Debtor's request for summary judgment; ordering Hartford to turn over the annuity to the Trustee; and dismissing the Debtor's counterclaim against Hartford. The Judgement is, therefore, affirmed.

A true copy.

Attest:

        CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
        EIGHTH CIRCUIT