# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 03-6006 MN

_____

| | |
|---|---|
| In re: Stanley Reid Henricksen | * |
| | * |
| Debtor | * |
| | * |
| Stanley Reid Henricksen, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Nauni Jo Manty, | * |
| | * |
| Appellee. | * |

_____

Submitted: April 8, 2003
Filed: April 18, 2003

_____

Before, WILLIAM A. HILL, SCHERMER, and FEDERMAN, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

_____

On January 29, 2003, the bankruptcy court[1] entered an order granting the Chapter 7 trustee's application for compensation and an order approving the trustee's final report.

---

[1]The Honorable Robert J. Kressel, United States Bankruptcy Judge for the District of Minnesota.

Debtor Stanley Reid Henricksen appeals the order approving the trustee's final report. We affirm.

## FACTUAL BACKGROUND

On January 10, 2001, Henricksen, by counsel, filed a Chapter 7 bankruptcy case. The United States Trustee appointed Nauni Jo Manty as the Chapter 7 trustee. At the time of filing Henricksen scheduled a Hartford Life Insurance Company (Hartford) annuity valued at $10,688.71 and an Individual Retirement Account (IRA) valued at $41,000. He claimed an exemption in both of these assets. The Section 341 Meeting of Creditors was scheduled for February 6, 2001, but the meeting was continued until March 6, 2001. On February 27, 2001, the trustee, therefore, filed a motion to extend the time to object to the claims of exemption and to Henricksen's discharge. That motion was granted by default at a hearing on this matter held on March 23, 2001. The trustee sought one more extension of the time to object to both the claims of exemption and to Henricksen's discharge, which the court granted. On May 30, 2001, prior to a ruling on either matter, the trustee served notice of a Settlement or Compromise of Controversy (the Settlement). The Settlement, signed by the trustee and counsel for Henricksen, provided that the debtor would turn over the annuity in the amount of $10,688.71, and that the trustee would not object to Henricksen's claim of exemption for the IRA. On July 3, 2001, the Court entered an order approving the Settlement. Henricksen did not appeal that order. The trustee then initiated efforts to have Hartford turn over the annuity to the estate.

In response, on September 26, 2001, Henricksen filed a motion to vacate the court's order approving the Settlement and asked the court to order his discharge. On October 5, 2001, following Henricksen's attempt to vacate the Settlement, the trustee filed an application to hire her law firm, Blackwell, Igbanugo, Engen & Saffold, P.A. (Blackwell), as counsel for the trustee. The court granted that request. On October 29, 2001, the court held a hearing on Henricksen's motion. Mr. Henricksen appeared *pro se*, and his counsel appeared as well. Henricksen's counsel withdrew at this hearing, and the court denied Henricksen's motion. Thereafter, Henricksen has appeared *pro se*. Also on October 29, 2001, the court entered an order granting Henricksen a discharge.

2

On November 5, 2001, the trustee filed an adversary proceeding against Hartford seeking turnover of the annuity. In response, on November 20, 2001, Henricksen sent a letter to the court requesting reconsideration of the court's Order denying Henricksen's motion to vacate the Settlement. On December 3, 2001, Hartford filed a request for interpleader to determine what party was entitled to the annuity proceeds. On December 3, 2001, the court entered an order denying Henricksen motion for reconsideration. The court then entered an order in the interpleader proceeding directing Hartford to turn over the annuity proceeds to the trustee. Henricksen appealed that order. On February 28, 2002, however, the trustee dismissed the adversary case, and on March 11, 2002, she notified the creditors in this case that she had collected assets and that they needed to file claims.

Both Henricksen and the trustee submitted briefs in the appeal. On May 17, 2002, the BAP, without oral argument, affirmed the bankruptcy court. It held that the prior unappealed orders of the bankruptcy court approving the Settlement and denying the motion for reconsideration were law of the case, therefore, Henricksen was not entitled to relief from the judgment directing Hartford to turn over the proceeds from the annuity to the trustee.[2]

On April 18, 2002, an article appeared in the Duluth News Tribune indicating that Henricksen owned two electric streetcars, which he kept on his brother's property. Henricksen had not scheduled these assets. On June 20, 2003, therefore, the trustee noticed a 2004 examination for both Henricksen, his brother, and Joseph Martin, Jr. Henricksen objected to the 2004 examinations, necessitating yet another hearing. In the meantime, Henricksen refused to cooperate with the trustee regarding the streetcars, requiring the trustee to file an application to employ Rick Miller, an investigator. On July 30, 2002, the court granted the trustee's motion to conduct 2004 examinations, and on August 9, 2002, the court granted the trustee's motion to hire an investigator.

Following the 2004 examinations and the investigation by Rick Miller, the trustee apparently determined that Henricksen did not, in fact, own the streetcars.

---

[2]*Hartford Life and Accident Insurance Company v. Henricksen (In re Henricksen)*, 277 B.R. 759, 764 (B.A.P. 8th Cir. 2002).

3

In preparing to conclude this case, on September 27, 2002, the trustee filed an application for attorney fees in the amount of $20,403.50 and expenses in the amount of $196.72. Rick Miller also filed an application for compensation in the amount of $545.40. Henricksen did not object to the application. On November 18, 2002, the trustee filed her final report and proposed distributions. The trustee reported that she had on hand the sum of $10,688.71. This amount represented the proceeds from the annuity and interest earned since turnover. The trustee proposed to pay trustee compensation in the amount of $809.79, and other administrative claims. She then proposed to distribute to Blackwell the balance of the funds remaining, or $9,086.62. While this amount is less than one-half that applied for, Blackwell did not object to the final report. On December 6, 2002, however, Henricksen did object. In his objection, Henricksen claims the trustee created delay by bringing up "many frivolous actions to increase her firms [sic] fees."[3] He also claimed that the trustee did not serve the Minnesota Department of Revenue (MDR), even though it filed a secured claim in the case in the amount of $7,325.53. The MDR did file a purported secured claim, but it did not indicate its collateral. Moreover, the claim is for unpaid individual income taxes for 1988. The MDR also did not enter an appearance or file an objection to the final report. Seven creditors filed claims in this bankruptcy case totaling $210,472.59.

On January 27, 2003, the court held a hearing, and on January 29, 2003, the court entered an Order granting the trustee's application for compensation and approving the trustee's final report. On February 6, 2003, Henricksen filed a notice of appeal of the Order approving the trustee's final report.

STANDARD OF REVIEW

A bankruptcy appellate panel shall not set aside findings of fact unless clearly erroneous, giving due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses.[4] We review an award of attorney's fees for abuse of discretion.[5]

---

[3]Trustee's Appendix, Ex. 11.

[4]*Gourley v. Usery (In re Usery),* 123 F.3d 1089, 1093 (8th Cir. 1997); *O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co., Inc.),* 118 F.3d 1246, 1250 (8th Cir. 1997)

DISCUSSION

While Henricksen ostensibly objected to the final report, all of his arguments are centered around the distribution to Blackwell. For that reason, we will treat this as an objection to the application for attorney's fees. A bankruptcy court has wide discretion to award or deny attorney fees.[6] The court also has a duty to examine the fee application for reasonableness.[7] In determining if compensation sought is reasonable, the court must look to the time spent, the nature and extent of the services provided, and the value of the services themselves.[8]

Hendricksen appeals the order of the bankruptcy court approving the trustee's final report. While he raises several issues on appeal regarding evidence and subpoenas, which were not raised at the trial level, the gravamen of his appeal is based upon his belief that the trustee erred in failing to list the MDR on the final report, that the BAP denied the trustee's request for attorney's fees in the previous appeal, therefore, she is not entitled to seek compensation from the estate, and that the trustee's attorney's fees are not reasonable. The bankruptcy court dealt with each of these issue in its Order Allowing Attorney's Fee Application and Approving Final Report. We will review the findings of the court as to each of these issues.

The court first addressed Henricksen's claim that the fees are unreasonable, and his charge that the trustee brought up many frivolous actions to increase her fees. As the court

_____

(citing *First Nat'l Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 609 (8th Cir.1997)). Fed. R. Bankr. P. 8013.

[5] *Apex Oil Co. v. Artoc Bank & Trust Ltd. (In re Apex Oil Co.)*, 297 F.3d 712, 717 (8th Cir. 2002); *Brown v. Luker (In re Zepecki)*, 277 F.3d 1041, 1045 (8th Cir. 2002); *Walton v. LaBarge (In re Clark)*, 223 F.3d 859, 862 (8th Cir. 2000).

[6] *In re Clark*, 223 F.3d at 863.

[7] *Id.*

[8] *Chamberlain v. Kula (In re Kula)*, 213 B.R. 729, 735 (B.A.P. 8th Cir. 1997).

found, and as the factual background of this case demonstrates, the trustee initiated few of the matters requiring litigation in this case. Henricksen negotiated a settlement, which he later tried to retract. He refused to cooperate and turn over a stipulated non-exempt asset of the estate. His intransigence necessitated two adversary proceedings to determine who should possess the annuity. He appealed the court's order resolving one of the adversaries, necessitating further fees. Henricksen refused to cooperate when the trustee correctly determined that he may have failed to disclose all of his assets. The court found that the actions by the trustee were "measured, directed, and reasonable in all respects and all of the time spent by the trustee and by her attorneys was necessary to the trustee's performance of her statutory and fiduciary duties."[9] The court also found that

> the time spent by the attorneys was appropriate, that the rate charged is reasonable, that services were rendered toward the completion of the case, the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed and taken.[10]

The court, therefore, did not abuse its discretion in finding that the compensation sought by the trustee's attorney was reasonable under the circumstances.

Henricksen never objected to the hourly rate charged by the trustee's attorney. Nor did he contend that any of the work was not performed. Henricksen, however, seems to believe that it was a conflict for the trustee to employ her own law firm to assist her in the performance of her duties. The Bankruptcy Code, however, authorizes the trustee to act as an attorney or accountant for the estate:

---

[9]Trustee's Appendix, Ex. # 16, pg. 86 (Order Allowing Attorney's Fee Application and Approving Final Report).

[10]*Id.*

6

The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate.[11]

The bankruptcy court, therefore, did not abuse its discretion in finding that it was in the best interest of the estate to employ Blackwell, the trustee's law firm, to act as attorney to the trustee. Henricksen does not claim that Blackwell is not disinterested. Section 327(a) of the Code limits the court's discretion to approve the employment of professionals only if such professionals hold an adverse interest or is not disinterested:

> (a) Except as otherwise provided in this action, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.[12]

The court then addressed Henricksen's concern for the MDR. It noted that the MDR was served with both the fee application and the final report, and it never filed an objection. In any event, the court found that section 724(b)(2) of the Code subordinates any claim of the MDR to administrative expenses.[13] At the bankruptcy court hearing the United States Trustee raised the issue of whether Henricksen had standing to object to the distributions set out in the final report, arguing that he has no pecuniary interest at stake. As a general rule, in order to have standing to appeal an order of the court the person aggrieved must demonstrate that he has been directly and pecuniarily affected by the order.[14] In other words, the person aggrieved must have a financial stake in the court's order.[15] Henricksen seems to

---

[11]11 U.S.C. § 327(d). *See also In re Alpern*, 246 B.R. 567, 577 (Bankr. N.D. Ill. 2000) (holding that a trustee may hire an attorney or a trustee may act as his own attorney).

[12]11 U.S.C. § 327(a).

[13]There is some question as to whether individual income taxes for the year 1988 are dischargeable. That issue was never resolved, however. MDR did file a proof of claim, and the record before us does not indicate any party in interest filed an objection to the claim.

[14]*Nangle v. Surratt-States* (*In re Nangle*),288 B.R. 213, 216 (B.A.P. 8th Cir. 2003).

[15]*Id.*

feel that the tax debt to MDR is nondischargeable, therefore, he will have to pay it unless the trustee satisfies this obligation as a priority tax claim. Perhaps if these facts had been more fully developed he could have shown that he has a financial stake in the court's order, but since we affirm on the merits, we need not decide that question. As for the MDR, the court correctly found that it was properly served with notice, but did not object, and that any amount due would be subordinated to administrative expenses in any event.

The court also addressed Henricksen's misunderstanding of the BAP's previous ruling. The trustee argued that the appeal of the bankruptcy court's order directing Hartford to turn over the proceeds of the annuity to the trustee was frivolous. To that end she sought an award of damages and double costs against Henricksen himself. It its Order of July 26, 2002, the BAP did not address the trustee's motion for damages and double costs, but nothing in that order can be construed to limit the trustee's right to apply for and receive compensation from the bankruptcy estate. In fact, the bankruptcy court awarded Hartford attorney's fees in the amount of $2,000.00 for the interpleader action, and Henricksen did not appeal that portion of the order. It is well-established that an attorney who complies with the Code and Federal Rules of Bankruptcy Procedure is entitled to reasonable and just compensation.[16] The bankruptcy court did not abuse its discretion when found the fees sought in this case were reasonable and just compensation for the services provided. The court therefore, did not abuse its discretion when it approved the trustee's final report, which proposed to distribute to the attorneys for the trustee the sum of $9,086.62. For all of the above reasons, we affirm.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT

---

[16]*Walton v. LaBarge (In re Clark)*, 223 F.3d 859, 863 (8th Cir. 2000).

8