*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 07b0006n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: DONALD L. SULLIVAN, | ) | |
| | ) | |
| Debtor. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| CASTLE NURSING HOMES, INC., | ) | |
| | ) | |
| Appellant, | ) | No. 06-8033 |
| | ) | |
| v. | ) | |
| | ) | |
| FREDRICK L. RANSIER, | ) | |
| | ) | |
| Appellee. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Eastern Division, at Columbus.
No. 98-55086.

Argued: February 6, 2007

Decided and Filed: April 4, 2007

Before: LATTA, PARSONS, and WHIPPLE, Bankruptcy Appellate Panel Judges.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

**COUNSEL**

**ARGUED:** J. Brian Kenney, KEHOE & ASSOCIATES, Cleveland, Ohio, for Appellant. Tiffany Strelow Cobb, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellee. **ON BRIEF:** J. Brian Kenney, Robert D. Kehoe, KEHOE & ASSOCIATES, Cleveland, Ohio, for Appellant. Tiffany Strelow Cobb, Lisa Pierce Reisz, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellee.

---

**OPINION**

---

MARY ANN WHIPPLE, Bankruptcy Appellate Panel Judge. Appellant Castle Nursing Homes, Inc., ("Castle") appeals the bankruptcy court's order granting an Application for Award of Fees and Reimbursement of Expenses of Attorney for Trustee ("Application for Fees") and approving the Chapter 7 Trustee's Final Report and Account ("Final Report"). For the reasons that follow, the bankruptcy court's order will be affirmed.

## I. ISSUES ON APPEAL

1. Does Castle's failure to appeal the bankruptcy court's order denying its motion to extend time to file a timely proof of claim preclude it from challenging the bankruptcy court's order approving the Final Report?

2. If not so precluded, does Castle have standing to object to the Final Report and the Application for Fees?

3. Did the bankruptcy court err in approving the Final Report, which failed to provide for any distribution to Castle?

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel ("BAP"). The order on appeal is final and may be appealed as of right. 28 U.S.C. § 158(a)(1). None of the parties have timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(c)(1).

This Panel reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Adell v. John Richards Homes Bldg. Co. (In re John Richards Homes Bldg. Co.)*, 439 F.3d 248, 253 (6th Cir. 2006). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Mathews (In re Mathews)*, 209

B.R. 218, 219 (B.A.P. 6th Cir. 1997) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)).  Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination. *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001).  Whether principles of issue or claim preclusion apply to Castle's arguments is a question of law reviewed *de novo. Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 301 (B.A.P. 6th Cir. 2004) (citing *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 461 (6th Cir. 1999)).  Likewise, whether Castle has standing to appeal the bankruptcy court's order is a question of law reviewed *de novo*. *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 852 (6th Cir. 2002).

## III.   FACTS

In 1996, Castle obtained a jury verdict against Debtor for breach of fiduciary duty in the amount of $630,000.  While the case was on appeal, and before Castle obtained a judgment lien, Debtor executed a mortgage in the amount of $165,000 in favor of his father, Carl Sullivan, against certain real estate owned by Debtor.  The mortgage  was recorded on January 10, 1997.  Thereafter, Castle recorded its judgment lien on February 27, 1997.

In August 1997, Thomas and Mary Gindlesberger filed a complaint in the Holmes County, Ohio, Court of Common Pleas ("state court") seeking to foreclose their mortgage interest in one of Debtor's parcels of real property.  In addition to Debtor, both Castle and Carl Sullivan were named as defendants by virtue of the judgment lien and mortgage held by them with respect to the subject real estate.  Castle filed cross-claims against Debtor and Carl Sullivan, alleging that the mortgage held by Carl Sullivan was a fraudulent conveyance. The state court granted the Gindlesbergers' unopposed motion for summary judgment and ordered a sheriff's sale of the property.  Following the sheriff's sale, on December 24, 1997, the state court issued an Order of Confirmation and Distribution wherein it ordered the sale proceeds to be distributed in payment of costs, fees, property taxes, and amounts owed to the Gindlesbergers in satisfaction of judgments obtained by them against Debtor.  A balance of $14,851.16 remained after such distributions, which amount the court ordered "to be held in Trust at the current prevailing interest rate until further order of the Common Pleas Court of Holmes County, Ohio."  It then ordered the release of the Gindlesbergers mortgage and the partial release of Castle's judgment lien and Carl Sullivan's mortgage to the extent they encumbered

the real estate sold.  The state court thus transferred the lien interests of Carl Sullivan and Castle to the proceeds of the sheriff's sale.[1]  The issue that remained in the state court proceeding was the resolution of competing claims to the sale proceeds as between Castle and Carl Sullivan.

On May 22, 1998, one month after the Ohio Supreme Court dismissed Debtor's appeal of the state court judgment in favor of Castle, Debtor filed a Chapter 7 bankruptcy petition.  Appellee Frederick L. Ransier ("Trustee") was appointed trustee in that case.  On August 31, 1998, Castle filed an objection to Debtor's discharge and to the dischargeability of its claim.[2]  On January 5, 1999, the Trustee's notice of assets was issued as well as a notice that the last day to file proofs of claim was March 30, 1999.  Although Debtor scheduled Castle on his bankruptcy Schedule D as a creditor holding a judgment lien in the amount of $630,000, all of which Debtor scheduled as being unsecured, Castle did not file a proof of claim before the bar date.  On January 28, 2000, Castle moved to extend the time for filing a proof of claim, arguing that the notice of the bar date was sent to a former address of Castle's counsel and was never received by counsel.  The bankruptcy court's proceeding memo filed on March 27, 2000, indicates that it held a hearing on Castle's motion to extend time, that Castle's claim would be considered a late-filed claim, and that counsel for the Trustee would prepare an order.  On April 6, 2000, Castle filed a motion for reconsideration of the bankruptcy court's March 27 oral ruling.  Also on April 6, 2000, but several hours after the motion for reconsideration was filed, the bankruptcy court entered a written order that any claim filed on behalf of Castle "shall be deemed to be a late filed claim and will be paid in accordance with the Bankruptcy Code provisions for untimely filed claims."  (Appx., Tab 11, p. 2.)  The order did not, however, specifically mention or address Castle's motion for reconsideration, and no order has been entered expressly denying the motion.[3]

---

[1] As found by the bankruptcy court in ruling on the Trustee's motion for determination that Castle violated the automatic stay, "[t]here was no dispute that through a December 24, 1997, state court order, the lien interests of Carl Sullivan and Castle were not extinguished, but transferred to the proceeds of the foreclosure sale and held in trust until further order of the state court."  (Appx., Tab 30, p. 6.)

[2] Judgment was ultimately entered in favor of Debtor in that adversary proceeding, and Debtor was granted a discharge on January 13, 2000.

[3] The Panel notes that, although the motion for reconsideration was file stamped several hours before the order denying Castle's motion to extend time for filing a timely proof of claim, it

On August 24, 1999, the Trustee filed an adversary proceeding seeking to avoid the mortgage granted to Carl Sullivan as a fraudulent transfer. The basis of the Trustee's complaint was that "Debtor transferred the property with 'actual intent to hinder, delay or defraud a creditor, Castle.'" (Appx., Tab 30, p. 3.) Castle sought unsuccessfully to intervene in that proceeding and, after trial on the complaint, on May 24, 2000, the bankruptcy court entered an order that the mortgage "is avoided pursuant to 11 U.S.C. § 544, and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 551." (Appx., Tab 14, p. 1-2.)

Thereafter, the Trustee filed a motion in the state court foreclosure proceeding for disbursement of the remaining proceeds from the sheriff's sale to the bankruptcy estate. It is undisputed that prior to avoidance, the Carl Sullivan lien was senior to any lien interest held by Castle.[4] Nevertheless, Castle objected to the motion and moved for clarification of the state court's order of confirmation and distribution. Castle asked the state court to find that the funds held in trust belonged to Castle. On March 27, 2001, the state court overruled Castle's objection and ordered that the funds should be turned over to the Trustee. Castle filed an appeal of that order. The Trustee filed a motion in the bankruptcy court, arguing that Castle had violated the automatic stay by filing the notice of appeal. The bankruptcy court agreed and entered judgment against Castle. However, the BAP reversed that judgment, finding no violation of the stay. Thereafter, the state court of appeals declined to reinstate Castle's appeal.

On March 24, 2006, the Trustee filed the Application for Fees and, on March 28, 2006, he filed his Final Report, which provided for no distribution to Castle. The Final Report also indicates that priority claims in the amount of $22,591 and timely filed unsecured claims in the amount of $22,465 remain unpaid due to insufficient funds in the estate. Castle objected to the Trustee's failure to include it in distributions from the estate and to attorney fees it argued were excessive. On June 21, 2006, after a hearing on Castle's objections, the bankruptcy court entered an order

_____

was not entered on the docket until after the order was entered.

[4] Although Castle sought to avoid the Carl Sullivan lien in state court, claiming that the lien was a fraudulent conveyance, that claim was never adjudicated before Debtor filed bankruptcy. Thus, the senior position of the Carl Sullivan lien was left intact as of the filing of Debtor's Chapter 7 petition.

overruling the objections and granting the Application for Fees and the Final Report. Castle filed a timely appeal on June 26, 2006.

## IV. DISCUSSION

Castle's argument that the bankruptcy court erred in approving the Final Report, which distributed the proceeds of the state foreclosure proceeding but did not provide for any distribution to Castle, is based on the following arguments: (1) Castle's claim cannot be disallowed for failing to file a proof of claim since it was a secured creditor and, therefore, was not required to file a proof of claim; (2) to the extent a proof of claim was required, the bankruptcy court should have deemed Castle to have filed a timely proof of claim; (3) the proceeds from the state court foreclosure proceeding ("the Proceeds") were improperly included as property of the bankruptcy estate subject to distribution by the Trustee, and (4) even if considered an unsecured creditor with an untimely filed claim, Castle would be entitled to distribution from the estate but for the bankruptcy court approving the excessive fees of counsel for the Trustee.

The Trustee argues that (1) these issues are not properly before the Panel due to Castle's failure to appeal the bankruptcy court's order denying Castle's motion to extend time to file a proof of claim and ordering that any claim filed by Castle will be paid in accordance with the Bankruptcy Code's provisions for untimely filed claims ("Castle Claim Order"), and (2) that Castle lacks standing to object to the Final Report since it is a creditor with an untimely filed claim who will not receive a distribution from the bankruptcy estate.

Initially, the Panel finds that Castle's failure to appeal the Castle Claim Order does not preclude it from arguing on appeal that it was a secured creditor or otherwise attacking the order. The Trustee contends that the bankruptcy court's order implicitly denied Castle's motion for reconsideration of the court's earlier oral ruling. However, the motion for reconsideration was filed just a few hours before the order was entered, and the Castle Claim Order refers only to the motion to extend time. There is no indication that the bankruptcy court was even aware of the fact that a motion for reconsideration, which generally tolls the time for filing an appeal,[5] had been filed at the

---

[5] A motion for reconsideration is considered filed under Federal Rule of Civil Procedure 59(e), which is made applicable to this case by Federal Rule of Bankruptcy Procedure 9023 and which tolls the time for filing an appeal. *See Inge v. Rock Fin. Corp.*, 281 F.3d 613, 617 (6th Cir.

time it entered its order. Under these circumstances, there is no basis for inferring the bankruptcy court's intent to deny the motion. *Cf. Kusens v. Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006) (finding that the district court's failure to explicitly rule on a motion for new trial does not affect appellate jurisdiction where it can be inferred that the court at least implicitly denied the motion).; *Normand v. Research Inst. of Am., Inc.*, 927 F.2d 857, 866 (5th Cir. 1991) (finding that the appellate court could infer rejection of a motion for new trial not expressly ruled upon by the district court where the court's "unequivocal judgment reflects an intent to dispose of the case completely"). Any notice of appeal filed before disposition of the motion for reconsideration would have been ineffective to appeal from the order. *See* Fed. R. Bankr. P. 8002(b). Nevertheless, while the motion for reconsideration was never expressly ruled upon, both the timing of the bankruptcy court's later order approving the Trustee's Final Report and the fact that the order is inconsistent with the relief sought in Castle's motion permit an inference that the motion was implicitly denied in the later order. *See Wimberly v. Clark Controller Co.*, 364 F.2d 225, 227 (6th Cir. 1966) (explaining that the determination of a motion need not always be expressed but may be implied by an entry of an order inconsistent with granting the relief sought). Thus, this appeal is Castle's first opportunity for review of the bankruptcy court's determination of issues raised in the motion to extend time and motion for reconsideration. As such, Castle's failure to file an earlier appeal of the Castle Claim Order does not preclude any of its arguments in this appeal.

The Trustee also argues that Castle lacks standing to object to the Final Report. Standing is "the threshold question in every federal case." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S. Ct. 2197 (1975). "The Supreme Court has stated that the standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into 'a vehicle for the vindication of the value interests of concerned bystanders.'" *Coal Operators and Assocs., Inc. v. Babbitt,* 291 F.3d 912, 915-16 (6th Cir.2002) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 473, 102 S. Ct. 752 (1982)). "To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged

---

2002) ("When a party files a motion to reconsider a final order or judgment within ten days of entry, we will generally consider the motion to be brought pursuant to Rule 59(e)."); Fed. R. Bankr. P. 8002(b) (providing that the time for appeal runs from the entry of the order disposing of a timely motion under Rule 9023).

action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Coal Operators,* 291 F.3d at 916. Thus, the constitutional requirements for standing are proof of injury in fact, causation, and redressability. *Coal Operators,* 291 F.3d at 916.

In this case, Castle has standing to appeal the bankruptcy court's approval of the Final Report to the extent it argues that, in the Final Report, the Trustee has improperly excluded Castle from any distribution from the bankruptcy estate. To the extent Castle succeeds in its arguments, the Trustee's failure to provide for such distribution constitutes an injury in fact that may be redressed by requiring the Trustee to include Castle in the distribution. *See Henricksen v. Manty (In re Henricksen)*, 291 B.R. 833, 838 (B.A.P. 8th Cir. 2003) (explaining that to have standing to appeal an order approving a final report, the person aggrieved must demonstrate that he has been "directly and pecuniarily affected by the order"). However, a determination of Castle's standing to appeal the bankruptcy court's approval of the Application for Fees requires the Panel to first determine whether Castle was entitled to receive a distribution from the estate. Absent such an entitlement, Castle has suffered no injury that may be redressed by reversal of the approval of the Application for Fees.

## A. Requirement of Filing a Proof of Claim

Castle contends that it was not required to file a proof of claim since it was a secured creditor. A creditor's secured status is determined under 11 U.S.C. § 506(a),[6] which provides as follows:

> [a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

Because Carl Sullivan's $165,000 mortgage was senior to the judgment lien held by Castle, and because their liens were transferred to the $14,851 proceeds of the state court foreclosure sale in the order of their priority, Castle could have no prepetition secured interest in the Proceeds unless

---

[6] Debtor's bankruptcy case was filed before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA version of the Code. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, sec. 1501(b)(1), Pub. L. No. 109-8, 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under Title 11 before the effective date of the Act).

the Sullivan mortgage was avoided prepetition. That did not happen. Thus, at the commencement of the Chapter 7 case, the Sullivan lien had attached to the Proceeds and Castle was an unsecured creditor, at least with respect to those Proceeds.[7] As an unsecured creditor, Castle was required to file a proof of claim in order to share in distributions from the bankruptcy estate. *See* Fed. R. Bankr. P. 3002(a). Castle's argument to the contrary is without merit.

To the extent that Castle is arguing that its status as an unsecured creditor with respect to the Proceeds changed due to the fact that the Trustee succeeded in avoiding the Sullivan mortgage under § 544, it is mistaken. Section 544(b) gives the trustee authority to avoid "any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable . . . ." 11 U.S.C. § 544(b)(1). Any transfer avoided under § 544 is automatically "preserved for the benefit of the estate." *See* 11 U.S.C. § 551. Thus, § 544(b)(1) "allows the trustee to 'step into the shoes' of a creditor in order to nullify transfers voidable under state fraudulent conveyance acts for the benefit of *all* creditors." *Corzin v. Fordu (In re Fordu)*,

---

[7] In its appellate briefs, Castle does not identify the collateral that it alleges secured its claim. However, at the hearing on its objection to the Final Report, Castle identified as collateral securing its claim the Proceeds of the state court foreclosure proceeding, as well as real estate located at North Washington Street, South Monroe Street ("the Adams Square Condominiums), South Washington Street, North Grant Street, and Floral Wood Drive. The Floral Wood Drive property in which Debtor claimed a dower interest was never administered by the Trustee and will be abandoned at the closing of the case. *See* 11 U.S.C. § 554(c). The record on appeal does not reflect either Debtor's interest in, or the disposition of, the Adams Square condominiums located on South Monroe Street. The remaining three properties, the North Washington, South Washington and North Grant Street properties, were sold free and clear of all liens and are the subject of the bankruptcy court's February 12, 2001, order. That order provided for the disbursement of funds from the sale of those properties and further provided that, after payment of costs and expenses, several mortgages, and a total payment of $5,000 on account of Castle's lien, the Trustee receive the balance of the proceeds from each sale "for the benefit of unsecured creditors." (Appx., Tab 18.) Castle did not appeal that order and cannot now argue that it is entitled to any additional distribution from the proceeds of those sales due to its alleged secured status.

While Castle may have had a secured interest in the Proceeds of the state court foreclosure proceeding if the Sullivan mortgage had been satisfied by the sale of other properties that were also the subject of that mortgage, that was not the case, and Castle does not so argue as a basis for finding it to be a secured creditor. In fact, the record on appeal indicates that the Sullivan mortgage was secured by only one of the three properties sold by the Trustee, the property located at 392 N. Washington, and generated only $13,791.03 in payment towards the $165,000 mortgage. (*See* Motion to Sell Property, Appx., Tab 16, p. 2 and attached Ex. B; Amended Order Granting Trustee's Motion to Sell Property, Tab 18; Report of Sale, Tab 21.)

201 F.3d 693, 698 n.2 (6th Cir. 1999) (emphasis added); *see Waldschmidt v. Metals (In re Ward)*, 42 B.R. 946, 951 (Bankr. M.D. Tenn. 1984) (explaining that § 551 is intended to prevent the windfall to junior lienors that would result when a trustee in bankruptcy successfully avoids a senior lien on property).

**B. Castle's Proof of Claim Is Not Deemed Timely Filed**

Castle argues that because it put the bankruptcy estate on notice of its claim when it filed its adversary proceeding against Debtor in August 1998, it should be deemed to have filed a timely proof of claim. The common law doctrine of "informal proofs of claim" "permits a bankruptcy court to treat the pre-bar date filings of a creditor as an informal proof of claim which can be amended after the bar date so that it is in conformity with the requirement of Fed. R. Bankr. P. 3001(a)." *Barlow v. M.J. Waterman & Assocs., Inc. (In re M.J. Waterman & Assocs., Inc.)*, 227 F.3d 604, 608 (6th Cir. 2000). Whether an informal proof of claim should be allowed is an equitable determination made within the sound discretion of the bankruptcy judge. *Id.* at 607. However, a review of the record on appeal fails to demonstrate that this argument was ever presented to the bankruptcy court.[8] Absent special circumstances, this Panel will not consider "issue[s] not passed upon" by the trial court. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S. Ct. 2868, 2877 (1976).

Moreover, even if considered, Castle's argument must fail. The Sixth Circuit has articulated five factors to be considered in determining whether an informal proof of claim should be allowed: (1) the proof of claim must be in writing; (2) the writing must contain a demand by the creditor on the debtor's estate; (3) the writing must express an intent to hold the debtor liable for the debt; (4) the proof of claim must be filed with the bankruptcy court; and (5) if the first four factors are met, a court should consider whether it would be equitable under the circumstance to allow the amendment of the informal proof of claim. *Barlow,* 227 F.3d at 609. Castle does not address these factors. While the filing of a complaint objecting to discharge and asserting the nondischargeability of a debt satisfies the first, third and fourth factors, Castle has not demonstrated that the complaint contains a demand on debtor's estate. A review of the complaint, which is not part of the record on appeal, is necessary. Castle also has not demonstrated that it would be equitable to allow an informal

---

[8] Castle did not include a transcript of the hearing on its motion to extend time to file a proof of claim in the record on appeal.

proof of claim under the circumstances of this case. Although it contends that it did not receive notice of the claims bar date, it did not file its motion to extend time to file proof of claim until nearly ten months after the bar date. There is no evidence indicating when Castle actually learned that it must file a proof of claim. However, the First Interim Application for Allowance of Compensation and Expenses filed by counsel for the Trustee reflects numerous contacts between Castle's attorney and the Trustee or counsel for the Trustee during the time period between the date of notice of the bar date and the date Castle filed its motion to extend time to file its proof of claim. To the extent that Castle learned of assets that would be available for distribution at an earlier date and thus, the necessity of filing a proof of claim, it may very well be found to be inequitable to permit Castle to remedy its failure to act at such a late date. In any event, the record before this Panel is insufficient to make the determination required under *Barlow.*

### C. The Proceeds Were Properly Included as Property of the Bankruptcy Estate

In arguing that the Proceeds are not property of the bankruptcy estate, Castle argues that the Trustee did not have authority to obtain the Proceeds from state court. Castle relies on § 550, which provides that "to the extent that a transfer is avoided under section 544 . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . . ." 11 U.S.C. § 550(a). Castle's argument, although somewhat confusing, seems to be that because Carl Sullivan's mortgage on the real estate had been released prepetition, the Trustee could not recover the "property transferred" and was instead required to obtain an order to recover "*the value of such property*," which the Trustee did not do. This argument has no merit.

Carl Sullivan's lien interest, which was in the form of a mortgage, was transferred to the Proceeds on sale of the real estate pursuant to the state court's Order of Confirmation and Distribution. Thus, at the time the bankruptcy court avoided the interest transferred to Carl Sullivan by Debtor, the Proceeds had been substituted for the real estate and Sullivan's lien interest had attached to the Proceeds. Therefore, the Trustee was entitled to recover the Proceeds, which were automatically preserved for the benefit of the estate pursuant to § 551, and was not required to obtain an order to recover the value of the property.

Castle also presents somewhat convoluted arguments in support of its contention that it has greater rights in the Proceeds than the Trustee, apparently based on its belief that the Sullivan

mortgage was extinguished and, thus, that the Trustee did not succeed to any lien interest in the Proceeds. Of course, if any lien interest of Carl Sullivan was extinguished by the state court order confirming sale of the real estate rather than being transferred to the Proceeds, so too was Castle's lien extinguished, thus, entitling Castle to no greater interest in the Proceeds. Nevertheless, as discussed above, Sullivan's mortgage did, in fact, attach to the Proceeds, leaving Castle unsecured with respect to the Proceeds given its junior lien position.

Castle also argues that the Proceeds cannot become property of the estate without a state court determination of its claim of entitlement to the Proceeds. This argument is also without merit. Castle's claim is based on its contention that the Carl Sullivan mortgage constituted a fraudulent conveyance under Ohio law. As discussed above, § 544(b) permits the Trustee to assert in the bankruptcy case Castle's fraudulent conveyance claim for the benefit of all unsecured creditors.

Finally, Castle argues that, but for the bankruptcy court approving excessive fees of counsel for the Trustee, under § 726(a)(3), it would have been entitled to distribution from the estate even if considered an unsecured creditor with an untimely filed proof of claim. However, the record does not support this argument. The attorney fees challenged by Castle total $36,500. According to the Final Report, a total of $22,591 in priority claims and $22,465 in allowed unsecured claims for which proofs of claims were timely filed remain unpaid due to insufficient funds in the estate. Castle is not entitled to any distribution until those priority claims and unsecured claims are paid. *See* 11 U.S.C. § 726(a)(3). Thus, even if Castle succeeds in its challenge to the award of attorney fees, it has no pecuniary interest in the distribution of those additional funds. As such, Castle lacks standing to appeal the bankruptcy court's order granting the Application for Fees and, in light of the foregoing, the bankruptcy court did not err in approving the Final Report.

## V. CONCLUSION

For the foregoing reasons, the bankruptcy court's order approving the Final Report and granting the Application for Fees is AFFIRMED.